UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| JARED ROBBINS, Individually and By and Through His Next Friends and Parents, MATTHEW ROBBINS and AMY ROBBINS, ) ) ) ) ) | |
| Plaintiffs, ) ) | Civil Action No. 5: 12-355-DCR |
| V. ) ) | |
| KENTUCKY HIGH SCHOOL ATHLETIC ASSOCIATION, et al., ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendants. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Plaintiff Jared Robbins' and his parents, Matthew and Amy Robbins', motion for a preliminary injunction. [Record No. 1-1] They seek to enjoin Jared's declaration of ineligibility so that he may participate in athletics during his senior year. Defendants Kentucky High School Athletic Association and its Commissioner, Julian Tackett (collectively, "KHSAA"), oppose the motion. The KHSAA points out that the entry of a preliminary injunction would be decisive in this case due to the limited duration of the athletic season. For the reasons discussed below, the Court will deny the plaintiffs' motion.

**I.   Background**

The KHSAA is the "management, supervisory, and enforcement organization for interscholastic athletics among public schools in the Commonwealth of Kentucky." [Record No. 1-1, p. 2 ¶ 4] Its member schools include Burgin High School ("Burgin") and Boyle County

High School ("Boyle County"). One of the bylaws adopted by the KHSAA — Bylaw 6 — is known as the "Transfer Rule." [Record No. 8-2] The Transfer Rule "provides that a student is ineligible for one year from date of enrollment at the new school if the student participated in varsity sports at the old school after entering the ninth grade." [Record No. 8, p. 3] Specifically, the bylaw states:

> Any student who has been enrolled in grades nine (9) through twelve (12) and has participated in any varsity contest in any sport at any school while maintaining permanent residence in the United States or a United States territory following enrollment in grade nine (9) and who then transfers schools shall be ineligible for interscholastic athletics at any level in any sport for one year from the date of enrollment in the new school.

[Record No. 8-2]

There are ten exceptions to this rule, allowing the KHSAA to waive the otherwise mandatory period of ineligibility under certain circumstances. Those exceptions are: (a) a bona fide change in residence; (b) divorce of the parents; (c) change of custody; (d) death of a parent; (e) entering or returning from boarding school; (f) non-athletic participation for an entire calendar year; (g) reassignment by the Board of Education; (h) transfer from a non-member school; (i) military assignment; and (j) cessation of school program. [*Id.*] Additionally, the KHSAA Due Process Procedure allows for waiver of the Transfer Rule "in cases where strict application of [Bylaw 6] is unfair to the student athlete because the circumstances creating the ineligibility are clearly beyond the control of all of the parties involved." [Record No. 8-3, p. 1]

Jared Robbins is a high school senior. Prior to the current school year, he was enrolled at Burgin where he participated in varsity athletics. Although the Robbins family resides in Boyle County, Jared attended Burgin "in part[,] because his mother was a teacher in the Burgin

school system." [Record No. 15, p. 3] However, Jared's younger brother Josiah has been educated in the Boyle County school system since his sixth grade year. During the 2011-2012 school year, when Jared was a junior, Josiah was offered the opportunity to join the varsity baseball team as an eighth grader. Because "the number of games increased with Josiah now committed to a full varsity baseball schedule, the amount of driving that needed to occur to support both Josiah and Jared increased significantly." [Record No. 15, p. 2] Additionally, Jared's parents became concerned about the possibility of injuries or other problems that might occur if they did not attend all of their sons' games. Due to the financial burdens and parental concerns that arose from the demanding new schedule, the Robbins family decided to transfer Jared to Boyle County for his senior year so that both boys "would be in the same school system." [Record No. 1-1, p. 5]

On September 4, 2012, Jared submitted a Transfer Form to the KHSAA requesting a waiver of Bylaw 6. The KHSAA Ruling Officer denied the request on September 10, 2012, and the Robbins's appealed that decision. Following a hearing on September 20, 2012, Hearing Officer Edmund P. Karem issued a Recommended Order. In this Order, Hearing Officer Karem stated that he was "unable to conclude that the circumstances creating the ineligibility were beyond the control of all the parties involved." [Record No. 8-4, p. 2] On October 10, 2012, the plaintiffs and Boyle County High School filed exceptions (*i.e.*, objections) to that conclusion; however, the Commissioner of KHSAA adopted the Recommended Order as a Final Order on October 15, 2012.

The plaintiffs filed suit against the KHSAA in Boyle County Circuit Court on November 14, 2012, seeking an injunction to "restrain the Defendants from prohibiting Jared to train practice, scrimmage, participate, and compete as a full member of the basketball team at Boyle County High School." [Record No. 1-1, p. 6] The KHSAA removed the action to this Court on December 3, 2012. [Record No. 1] The plaintiffs moved for a temporary restraining order on December 7, 2012. The Court held a hearing on the motion on December 10, 2012. At the close of the hearing, the Court denied the motion for a temporary restraining order. The plaintiffs then moved for a preliminary injunction, and the Court established an abbreviated briefing schedule for the motion.[1] The matter is now fully briefed and ready for adjudication.

## II.     Standard for Preliminary Injunction

A preliminary injunction is an extraordinary equitable measure. It has been characterized as "one of the most drastic tools in the arsenal of judicial remedies." *Am. Civ. Liberties Union of Ky. v. McCreary Cnty., Ky.*, 354 F.3d 438, 444 (6th Cir. 2003) (internal quotation marks and citation omitted). For this reason, it should not be extended to cases which are doubtful or do not come within well-established principles of law. *See id.* The Sixth Circuit has identified the following factors to be considered in evaluating a motion for injunctive relief: (1) the likelihood of success on the merits; (2) whether the injunction will save the plaintiffs from irreparable injury; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the injunction. *Certified Restoration Dry Cleaning Network,*

---

[1] The parties agreed that the hearing on the motion for a temporary restraining order was sufficient to present their positions regarding the motion for preliminary injunction, and have not requested an additional hearing on the current motion.

*L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007). None of these are prerequisites that must be met. Instead, they are interconnected factors that the Court must balance in order to determine if a preliminary injunction should be granted. *See Jones v. City of Monroe*, 341 F.3d 474, 476 (6th Cir. 2003). Additionally, there is no rigid formality required in applying these factors and they need not be given equal weight. They are simply meant to guide the Court in exercising its discretion. *See Suster v. Marshall*, 149 F.3d 523, 528 (6th Cir. 1998).

As an initial matter, the plaintiffs bear the burden of proving that a preliminary injunction is proper. *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). "A preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Certified Restoration*, 511 F.3d at 542 (internal quotation marks omitted). While the plaintiffs are not required to prove their case in full to obtain injunctive relief, the proof needed "is much more stringent than the proof required to survive a summary judgment motion." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000).

**III.    Analysis**

Preliminary injunctions are generally disfavored in cases involving challenges to eligibility decisions made by the KHSAA. Because of the short duration of high school athletic seasons, the Court should be especially careful granting emergency relief in such cases. "If an injunction . . . is granted erroneously, it will be practically impossible to unscramble the tournament results to reflect the ultimate outcome of the case." *Ky. High School Athletic Ass'n v. Hopkins Cnty. Bd. of Ed.*, 552 S.W.2d 685, 690 (Ky. Ct. App. 1977). Indeed,

> [i]n almost every instance, the possible benefits flowing from a[n] . . . injunction will be far outweighed by the potential detriment to the Association, as well as to its member schools who are not before the court. Only in rare instances would the granting of the . . . temporary injunction be a proper remedy.

*Id.* The Court considers whether injunctive relief should be granted against this backdrop.

### A. Likelihood of Success on the Merits[2]

A plaintiff is "not required to prove his case in full" when seeking a preliminary injunction. *Certified Restoration*, 511 F.3d at 542. However, he must show more than a mere possibility of success on the merits. *Id.* at 543. "'[I]t is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as make them fair ground for litigation and thus for more deliberative investigation.'" *Id.* (quoting *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985)).

In the present case, the plaintiffs concede that Jared does not qualify for any of the enumerated exceptions to Bylaw 6.[3] Instead, they argue that "the strict application of the 'Transfer Rule' is unfair to him because the circumstances that created the ineligibility were clearly beyond the control of all parties involved." [Record No. 15, p. 1] The plaintiffs maintain that the KHSAA should have used the discretion provided by the Due Process Procedures to

---

[2] Although the Court must consider whether there is a strong likelihood of success on the merits, the discussion that follows is not intended to be a final decision on the merits of the case.

[3] The plaintiffs do not challenge the KHSAA's interpretation of Bylaw 6 or claim that it is unconstitutional. Even if they had brought such claims, however, they would not be likely to succeed. The Court should not "substitute [its] interpretation of the bylaws of a voluntary association for the interpretation placed upon those bylaws by the voluntary association itself so long as the interpretation is fair and reasonable." *Hopkins*, 552 S.W.3d at 687. Moreover, the Kentucky Court of Appeals explicitly upheld the precursor to Bylaw 6 in *Hopkins*. *See id.* Although the bylaw was subsequently amended, the KHSAA correctly points out that the version upheld in *Hopkins* was more strict than the current version. [Record No. 16, p. 3]

waive the application of Bylaw 6. Thus, they assert that the KHSAA erred in refusing to waive Jared's period of ineligibility.

The Court should only grant relief from a decision of the KHSAA if the plaintiffs can show a "substantial probability that the athletic association's ruling was arbitrary and capricious."[4] *Nat'l Collegiate Athletic Ass'n v. Lasege*, 53 S.W.3d 77, 83 (Ky. 2001). The Kentucky Supreme Court has "held that a ruling is arbitrary and capricious only where it is 'clearly erroneous.'" *Id.* at 85. The court further clarified that a "clearly erroneous" ruling is one that is "unsupported by substantial evidence." *Id.* "Substantial evidence has been defined as evidence which has sufficient probative value to induce conviction in the minds of reasonable people." *Ky. Unemployment Ins. Comm'n v. Cecil*, 381 S.W.3d 238, 245 (Ky. 2012). The Court's disagreement "as to the weight which should be assigned to [the] evidence" is not sufficient to show that the KHSAA's decision was clearly erroneous and thus arbitrary and capricious. *Lasege*, 53 S.W.3d at 85.

The plaintiffs contend that Jared's transfer was the result of circumstances outside of their control. They argue that Josiah's participation in varsity sports created a situation that necessitated Jared's transfer. The plaintiffs assert that they had no control over the Boyle County athletics department's decision to offer Josiah "the opportunity to play varsity sports as an eighth grader."[5] [Record No. 15, p. 3] Although they concede that they had control over the

---

4    There is no due process right implicated by Jared's ineligibility to participate in interscholastic athletics. [Record No. 8, p. 8]

5    The plaintiffs also argue that they "did not create college tuition costs . . . and they have no control over the oil futures market." [Record No. 15, p. 4] While this is undoubtedly true, these are not "circumstances creating the ineligibility." [Record No. 8-3, p. 1] Rather, the cost of college tuition and gasoline create a backdrop against which the Robbins family's decision was made. If any student athlete who

decision to allow him to play, they argue that it was not a real choice "when the benefits to him could prove to be truly life-changing." [*Id.*, p. 4]

The Court cannot conclude that the KHSAA's decision was unsupported by substantial evidence. Josiah's invitation to play varsity baseball does not constitute a circumstance outside of the Robbins family's control. Matthew and Amy Robbins made the decision to send their sons, who are three years apart in school, to different high schools. In fact, the decision to send Josiah to a different school was based in part on his desire to play football — Boyle County has a football team and Burgin does not. [Record No. 8-4, p. 1] Therefore, the Robbins' initial decision to place their sons in different school systems was motivated by a desire to give Jared and Josiah the very athletic opportunities that were the source of the family's later financial and personal difficulties. The Robbins family might not have anticipated the problems that would be caused by their sons participating in athletics at different high schools. However, the fact that both athletically-inclined young men would end up playing on different varsity teams at the same time — if not during the 2011-2012 school year while Josiah was in eighth grade, then in 2012-2013 when he was a freshman and Jared was a senior[6] — was foreseeable. Moreover, even if the situation was in fact unforeseeable, it would not necessarily follow from that conclusion that the situation was out of the Robbins family's control.

The Hearing Officer is only authorized to waive the application of Bylaw 6 if the "circumstances creating the ineligibility are *clearly* beyond the control of all of the parties

---

transferred schools could avoid ineligibility by citing such attenuated "circumstances," Bylaw 6 would essentially be eviscerated.

6    Jared participated in varsity athletics during his freshman year. [Record No. 16, p. 4]

involved." [Record No. 8-3, p. 1 (emphasis added)] Here, although the Robbins family had obviously experienced financial hardship and difficulty with their sons' competing schedules, it is not clear that those issues arose from circumstances that were outside of their control. Keeping in mind that "the members of [voluntary athletic] associations should be allowed to 'paddle their own canoe' without unwarranted interference from the courts," this Court should hesitate to substitute its judgment for that of the KHSAA. *Lasege*, 53 S.W.3d at 83. Regardless of whether this Court would have reached the same conclusion, there is substantial evidence in the administrative record to support the Hearing Officer's decision. The KHSAA's ruling is not clearly erroneous and the Court cannot, therefore, conclude that it is arbitrary or capricious.[7] In short, the plaintiffs have failed to show a likelihood of success on the merits.

### B. Irreparable Harm

To succeed on a motion for a preliminary injunction, the plaintiffs must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 8 (2008) (rejecting a standard based on the "possibility" of irreparable harm as "too lenient"). The injury claimed by the plaintiffs is that "Jared Robbins will not play any sport his senior year in high school without an injunction." [Record No. 15, p. 5] The KHSAA argues that, because participation in athletics is not a constitutionally protected right, the

---

[7] The plaintiffs argue that "the hearing officer did not allow the Robbins to introduce evidence in the form of receipts demonstrating the adverse financial effect that the status quo had on their family at the time Jared was enrolled at Burgin and Josiah was enrolled at Boyle." [Record No. 15, p. 4] However, this assertion is not a reason to find the KHSAA's decision arbitrary or capricious. A review of the hearing recording reveals that although Mr. Robbins had his receipts with him at the hearing and testified that his gas bill had gone up dramatically, he did not ask the Hearing Officer to look at the receipts or admit them into evidence. Moreover, the Hearing Officer's Recommended Order makes specific findings about the Robbins family's gas costs per season. Thus, the KHSAA took Mr. Robbins' testimony on this point into account even if it did not admit his receipts into evidence.

plaintiffs have failed to demonstrate an irreparable injury. [Record No. 8, p. 13] However, a plaintiff can show irreparable injury even if his claims are not based on a violation of his rights. *See Certified Restoration*, 511 F.3d at 550 (finding an irreparable injury where plaintiff's claim resulted from the breach of a non-compete agreement). "A plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages." *Overstreet*, 305 F.3d at 578. The Court agrees with the plaintiffs that, if the KHSAA's decision was improper or arbitrary, Jared will be harmed by his ineligibility to play high school sports. Moreover, because money damages would not fully compensate Jared for this loss of experience, the injury would be irreparable. This factor weighs in favor of granting the preliminary injunction.

### C.     Balance of Hardships

The third factor in the Court's analysis — whether the injunction would cause substantial harm to others — is a question of balancing harms. The Court must "(1) balance the harm [the plaintiffs] would suffer if [their] request for a preliminary injunction were denied against the harm [the defendant] would suffer if an injunction were to issue, and (2) assess the impact the preliminary injunction might have on relevant third parties." *Rest. Adver. Grp., Inc. v. J.P. Morgan Chase & Co.*, No. 2:04-cv-1020, 2005 WL 6736847, at *11 (S.D. Ohio Feb. 11, 2005). The plaintiffs concede that the KHSAA would be harmed by a preliminary injunction due to the organization's "interest in enforcing its Bylaws." [Record No. 15, p. 6] However, they maintain that the KHSAA has failed to show how its member schools or their players would be injured by the entry of a preliminary injunction in this case.

The KHSAA counters that the fact of a potentially ineligible student playing a varsity sport necessarily means that "another Boyle County student athlete . . . loses an opportunity to participate or compete for that team." [Record No. 16, p. 8]  Additionally, it asserts that the other member schools would be harmed by having to compete against a potentially ineligible player.  The KHSAA points out that this harm would accrue immediately because "post-season eligibility, progression, and seeding are determined by the performance in the regular season." [*Id.*]  Because the Bylaws no longer allow the KHSAA to require the forfeiture of a team that played a athlete who is later declared ineligible by a court, there is no recourse for the other teams if the Court were to grant the preliminary injunction, but later find in favor of the KHSAA.[8]

The Court concludes that a preliminary injunction would cause substantial harm to the KHSAA.  Additionally, the potential harm to KHSAA's member schools is substantial, as is the potential harm to the would-be Boyle County student athlete who will not have the opportunity to compete if Jared plays under an injunction.  The harms laid out by the KHSAA may not outweigh the irreparable injury to Jared that would result from the denial of the preliminary injunction, but they do balance out that injury.  Therefore, the Court concludes that this factor cuts both ways.

### D.     Public Interest

Finally, the Court must weigh whether the public interest would be served by granting a preliminary injunction.  The plaintiffs assert that the public would be served by a preliminary

---

8     This does, however, mean that there is no potential harm to Boyle County, because it will not be in danger of forfeiture.

-11-

injunction because "it forces KHSAA to apply its rules based on each student athlete's individual circumstances." [Record No. 15, p. 7]  The KHSAA, on the other hand, contends that the public has an interest in "the proper application of [the] regulations to ensure competitive equity." [Record No. 16, p. 10]  It maintains that a preliminary injunction in this case would undermine the KHSAA's ability to "effectively enforce its rules and regulations." [*Id.*]  The Court agrees.

The KHSAA handles "nearly one thousand transfers" per year. [Record No. 8, p. 3; *see* Record No. 15, p. 7]  The plaintiffs argue that each of these transfers should be considered individually.  However, the costs involved in investigating each transfer would be substantial. Moreover, as the KHSAA points out, it "would have rare success in identifying athletically motivated transfers disguised as non-athletically motivated transfers." [Record No. 8, p. 3] Applying an objective standard is not only in the best interest of the KHSAA for practical reasons, but it also serves the public interest by giving students and their parents a consistent rule.  It would not be in anyone's interest — least of all the students most directly affected — to make the process of transferring schools more unpredictable.  And an application of Bylaw 6 that depends on an individual assessment of each student's particular circumstances would do exactly that.  Therefore, this factor weighs strongly against the grant of a preliminary injunction.

### IV.     Conclusion

A "preliminary injunction is reserved for only the most egregious case, and should not be extended to cases which are doubtful or do not come within well-established principles of law."  *Bonnell v. Lorenzo*, 241 F.3d 800, 826 (6th Cir. 2001) (citing *Detroit Newspaper Publishers Ass'n v. Detroit Typographical Union*, 471 F.2d 872, 876 (6th Cir. 1972)).  Here, the

plaintiffs have failed to meet their burden of showing that a preliminary injunction is warranted under the circumstances presented. Accordingly, it is hereby

    **ORDERED** that the plaintiffs' Motion for Preliminary Injunction [Record No. 1-1] is **DENIED**.

    This 26th day of December, 2012.

Signed By:
*Danny C. Reeves* DCR
United States District Judge